UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| JAMES VAN CONNOR, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC.<br><br>Defendant. | (Jury Trial Requested) |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff James Van Connor brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

2. Mr. Connor alleges that Defendant Charter Communication, Inc. sent him automated telemarketing calls promoting Charter's television, internet and voice services without prior express written consent, despite the fact his number has long been listed on the National Do Not Call Registry.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.     A class action is the best means of obtaining redress for the Defendant' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.     Plaintiff James Van Connor resides in Greenville County.

6.     Defendant Charter Communications, Inc. is a Delaware corporation with its corporate headquarters in Stamford, CT. It does business throughout the United States, including in this District.

7.     Charter sells television, internet, and voice services to customers through its "Spectrum" brand.

### Jurisdiction & Venue

8.     The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the SCTPPA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendant.

9.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff Connor—occurred in this District.

### Statutory Background

THE TCPA

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer can indicate her desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

12. The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

13. The TCPA also makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

14. These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

THE SCTPPA

16. On May 18, 2018 the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

17. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a telephone number on the National Do Not Call Registry. S.C. Code. § 37-21-70(B).

18. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C> Code § 37-21-80.

THE GROWING PROBLEM OF AUTOMATED TELEMARKETING

19. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

20. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

21. Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

22. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

23. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last

visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

24. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

## **Factual Allegations**

25. Mr. Connor's number, 864-834-XXXX, is a residential telephone number on the National Do Not Call Registry.

26. Mr. Connor's number has been on the National Do Not Call Registry since 2010.

27. Mr. Connor's number has not been removed from the National Do Not Call Registry at any time since 2010.

28. Mr. Connor's number is assigned to a cellular telephone service.

29. At the end of April 2019, Mr. Connor began receiving repeated telemarketing calls from (833) 875-0495.

30. Mr. Connor ignored the calls, which occurred twice on April 22 and once on April 23 and 24.

31. Finally, on May 1, 2019, Mr. Connor answered the call.

32. When the Plaintiff received the call there was no one on the other line until he said "hello" multiple times, indicating that the call was dialed automatically by a computer from a stored file or list.

33. Then an individual identified used a scripted sales pitch in order to offer Charter services.

34. These facts indicate that the calls were made with an automatic telephone dialing system as that term is defined in 47 U.S.C. § 227(a)(1).

35. To confirm that it was Charter, Mr. Connor engaged the telemarketer and received an order number of 8351-1005-6014-7551.

36. Mr. Connor then cancelled the order.

37. Mr. Connor did not give Charter his consent to call his cellular phone using an auto-dialer.

38. Mr. Connor and others who received these calls were temporarily deprived of legitimate use of their phones, and their privacy was invaded.

## **Class Action Allegations**

39. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

40. The proposed classes are tentatively defined as:

ATDS CLASS:

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendant, or someone on its behalf, placed a call to his or her cellular telephone line, using the same or similar equipment used to call the Plaintiff, attempting to sell Charter goods or services and where Defendant's records do not indicate written consent from the recipient or where the purported consent was obtained in the same or similar fashion.

DNC CLASS:

> All persons within the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time within the four years prior to the filing of this action, Defendant, or someone on its behalf, placed more than one call within any twelve-month period to promote the sale of Charter products or services.

SCTPPA CLASS:

> All persons with a South Carolina area code, whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time from May 18, 2018, Defendant, or

6

someone on its behalf, placed at least one call by or at the direction of Defendant called to promote the sale of Charter products or services.

41. The Plaintiff is a member of all classes.

42. Excluded from the classes are the Defendant, any entities in which the Defendant have a controlling interest, the Defendant' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

43. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

44. Based on the automated nature of telemarketing campaigns, there are likely thousands of class members. Individual joinder of these persons is impracticable.

45. There are questions of law and fact common to Plaintiffs and the proposed class, including:

  a. Whether the Defendant used an ATDS to send telemarketing calls;

  b. Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

  c. Whether the Defendant placed calls to numbers on the Do Not Call Registry;

  d. Whether the Defendant's TCPA violations were negligent, willful, or knowing;

  e. Whether the Defendant's SCTPPA violations were willful; and

  f. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

46. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

7

47. Plaintiff is an adequate representative of the classes because his interests do not conflict with the classes' interest, he will fairly and adequately protect the classes' interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

48. The Defendant's actions are applicable to the classes and to Plaintiff.

49. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendant and others.

50. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

51. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FOR A FIRST CAUSE OF ACTION

### (Violation of the TCPA's provisions prohibiting autodialer calls to cell phones)

52. The above allegations are realleged to the extent not inconsistent with the allegations of this cause of action.

53. The Defendant violated the TCPA by (a) initiating a telemarketing call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service without prior express written consent, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

54.     The Defendant's violations were willful or knowing.

55.     The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendant from using an automatic telephone dialing system, absent an emergency circumstance or prior express written consent.

## FOR A SECOND CAUSE OF ACTION

### (Violation of the TCPA's Do Not Call provisions)

56.     The above allegations are realleged to the extent not inconsistent with the allegations of this cause of action.

57.     The Defendant violated the TCPA by (a) initiating more than one telemarketing call to the Plaintiff in a twelve-month period while Plaintiff's number was on the National Do Not Call Registry or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 U.S.C. § 227(c).

58.     The Defendant's violations were willful or knowing.

## FOR A THIRD CAUSE OF ACTION

### (Violation of the SCTPPA)

59.     The above allegations are realleged to the extent not inconsistent with the allegations of this cause of action.

60.     The Defendant violated the SCTPPA by (a) initiating a telemarketing call to the Plaintiff, a South Carolina resident, Plaintiff's number was on the National Do Not Call Registry or (b) by the fact that others caused the initiation of those calls on its behalf. *See* § 37-21-70(B).

61.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. *See* § 37-21-80.

WHEREFORE,

Plaintiff requests the following relief:

A. That the Court certify the proposed classes;

B. That the Court appoint Plaintiff as class representative;

E. That the Court appoint the undersigned counsel as counsel for the class;

F. That the Court enter a judgment permanently enjoining the Defendant from using an automatic telephone dialing system, absent an emergency circumstance.

G. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

H. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA;

I. That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

J. That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

DAVE MAXFIELD, ATTORNEY, LLC

By:   _s/ Dave Maxfield_____
David A. Maxfield, Fed. ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

July 16, 2019